Final case for argument this morning is 2012-1110, TRANS VIDEO ELECTRONICS v. SONY. Mr. Sweeney, whenever you're ready. Good morning, Your Honors. Claim 3, the claim in this patent that's deserted, every structural element of that claim is depicted in Figure 5. The Video Storage Units, the Distribution Amplifier Units, the Communications Units, the Receiver, the Menu Storing Unit. Wait, so you're relying just on Claim 5, not the combination of 1B and 5? Figure 5, I'm relying on both, but I'm pointing out. Where in Figure 5 is there a description of the Master Communication Unit coupling to a plurality of distribution units? Coupling to a plurality of distribution amplifiers? Yes, if you look at Figure 5, Element 535, A, B, D, E, they're all CSU, DSU units. Any one of those can function as the Master Controller Unit. But this is not what you argued. My recollection is you were arguing 516 is the Master Comm Unit. Well, they're also CSU, DSUs. I didn't understand you to be arguing that 535, did I miss it? Well, the patent very specifically states that those are CSU, DSU units. The 516 CSU, DSU units are the CSU, DSU units that take the command signal, but the 535 CSU, DSU units are described in the depiction that goes with Figure 5 as downloading video. Those are the downstream ones. They don't perform the function of the Master Communication Unit. The CSU, DSU unit, Your Honor, can go in both directions. Now, it is true that Judge Patel, when she found that the CSU, DSU units can function as the Master Communication Unit to upload video from the user, she specifically found that, she was looking at Figure 1B. But those are the videos going out, not the stuff coming in. Well, they can go, I believe the patent indicates CSU, DSU units can both receive and download videos. But what about the ones that 516 could receive, the ones that 535 can only send out? I don't think so, Your Honor. Judge Patel did refer to Claim 1, for instance, in her markment decision and said that the distribution amplifiers can receive video that's uploaded. Well, that video that goes to the distribution amplifiers has to get there through these CSU, DSU units. Claim 1, which Judge Patel found that it could receive video through the MCU, the uploading, is a sub-genus of Claim 3. In any event, it is... Okay, the patent refers to 533 as multiple line outputs, which are respectively coupled to the DSU, CSU units 535. It goes on to explain how they're for outputting video. It does explain how they're for outputting. But Judge Patel said that the Master Communication Unit can also upload videos, not just from anywhere, but from users. And the users are shown here in Figure 5 at 555 A, B, and C. And it is true that Judge Patel looked at Figure 1B, and there's nothing wrong with doing that. That's one of ordinary skill would do that. This is not the Agilent case where these embodiments are taught to be incompatible. These are highly compatible embodiments. And our expert looked at those, and Judge Patel looked at them as well. And there's nothing in the law. These other cases that Sony cites are cases where there's no description of the elements of a claim in the patent at all. There's only one case where embodiments... There's only one case where it's taught that the embodiments are incompatible with one another. I'm looking at 1B. Where's the menu storing unit or the video clip storing unit? I don't think the menu storing unit is shown in Figure 1B, but there are storage units shown in Figure 1B. They're referred to as backup storage units, and they're referred to in the patent as being similar to the video storage units. Now, so according to the case law, the elements of the... I want you to show me where in your briefs that you argued 535 is the master comm unit, and that satisfies the written description. We argue that... I don't see it anywhere, and so I want to know where you argued it so that you preserved it for appeal. Your Honor, what we argue... I didn't see you argue it below either. We argue that CSUDS units and master communications units are the same thing. No, in your brief you expressly argue that 516, I don't have the number in front of me, is the master communication unit. Yeah, 516, so I want to know where you alerted this court and the lower court to the idea that the written description decision was wrong because 535 shows master communication units coupled to amplifiers. It's your obligation, so I want to know where you alerted us to this. Yes, Your Honor, we have referred to the master communication... Show me where in your brief, I want a line and a page number where you made this argument. On the top of page 53, it says, going a step further, figure 5 itself describes the CSUDSU unit that received the videos. It continues, it continues, this is figure 5 support. On page 52, you say the master communication unit in figure 5, which is embodied as, and you have it in bold, 516 CSUDSU unit, which can receive videos. We've said both. On one page, you tell us the master communication unit in figure 5 is embodied in 516 CSUDSU. Then on the next page, you say the CSUDSU unit is the master communication unit. How in the world are we supposed to discern from that that you think 535 is also a master communication unit? I think we said it on the top of page... Where? Figure 5 itself describes the CSUDSU unit that receives the videos. This is figure 5 support that the master communication unit recited in claim 3 described as a CSUDSU unit receives the videos. Right, number 516. The patent describes 516 as well as 535 as being CSUDSU units. Correct, but not that receive videos. The patent only describes 516 units as receiving videos. And you in your brief did not preserve the issue that 535 is a master communication unit that receives videos. Your Honor, respectfully, I... CSUDSU, that doesn't mean they all perform the same function. Correct, and the function of 535 to receive videos is not described. I agree with you, Your Honor, in the description of figure 5. Judge Patel had to look to figure 1B to see the exact same type of device, CSUDSU unit, receiving videos. And she went further than just saying they received videos. She said they received videos from the user. And there's absolutely nothing wrong with combining figure 1B and elements from figure 1B and figure 5. And the Agilent case is not applicable here because it taught that embodiments were incompatible. There's been no showing that these embodiments are incompatible so as to render this patent invalid on summary judgment. Now, in addition to this, I think there's an underlying claim construction issue. And the claim construction issue is that while the master communication unit or the CSUDSU unit can receive both videos and non-videos, there's another term in Claim 3 that says corresponding to data related to the subject matter stored in the videos. We had asked in the Markman hearing for that corresponding term to be construed as storing videos that could be stored in the future. Sony said that that corresponding term related to videos that had previously been stored. There was an agreement that that corresponding term did in fact refer to videos. I think Claim 3, the corresponding term has to be construed that way. And if it is, that will be consistent with what Judge Patel found, namely that users can upload videos. It would be consistent also with the prosecution history where it was argued that the user can make the library by uploading videos. The construction that has been made allows someone to say that in one embodiment of Claim 3, a command signal can be then stored in the video and then downloaded. Can I just step back a minute and ask you a more general question to make sure I'm getting this? Is it your argument that a written description requirement can be satisfied if you combine certain elements from one of the figures and certain from the other and establish that it would have been obvious for one skill in the theater to do that combination? No, Your Honor. No, that is not my position, especially the obvious part. In order to satisfy the written description requirement, I believe you have to, the application has to inform one skill in the art that the inventor was in possession of the invention. And to do that, you can't. And you are arguing in this case that you can do that by picking certain pieces out of Figure 1B and other pieces out of Figure 5 and combining them? There are many cases that say that. Am I right about that? That's what you're asking the court to do. The written description can be supported by certain features from one embodiment and certain features from the other, unless they are taught to be incompatible, as in the Agilent case. So it's kind of an obviousness analysis, right? It's not an obviousness. Well, unless they're taught to be compatible, it seems to me like unless you're teaching away, otherwise you can combine... Well, I don't think the case has regarded that as an obvious analysis. What are your best cases that establish that you can do that to satisfy written description? Well, all of the cases that are cited in Sony's brief, there's not one of them that holds that written description... But I didn't ask you if there are any cases against you. I wanted to know if there are any cases that support your position. The only case I know that's really directly on point is the Agilent case, which says you can't combine embodiments. It was an open container that showed bubble mixing, and it was a closed container that showed some other process, and then the claim said, you know, we're going to bubble mix in a closed container. It said those are incompatible. And the other case is... And how does that help you? Well, it shows that what is necessary to invalidate a claim for written description, that there's no prohibition on going to a second embodiment or a third embodiment unless those embodiments are shown to be incompatible. The patent is to presume to be valid here. Do you want to say that or make another point here? I just want to say one more point in my rebuttal, and that is... You know, there's two other issues. One is the claim construction issue. I think the claim is construed to... that the Master Communication Unit of Claims requires the uploading of video, as it should be, because I think it doesn't make any sense to rebroadcast command signals, then there's clearly a written description. If the claim construction is not changed, and we're simply talking about Claim 3, and the Master Communication Unit can receive uploaded videos, but it can also receive uploaded command signals, the one species of the uploading of videos and then downloading them is shown in a combination of figures, and the written description of the species is sufficient to support a written description. And I do want to say one more point, and I'll take it in my rebuttal, on the motion to amend, the denial of the motion to amend. The deadline was September 6 for final contentions after the Markman hearing. On August 31, we were asked by Sony that we should extend it. It was proposed a few days later, September 2. The extension was agreed to, to be September 30 from September 6. We relied upon that date, and I don't think that's proper to say that we delayed or we were in bad faith. The extended date applied to both Sony and to Transvideo. Okay, we'll save the rest of your rebuttal. We'll hear from the other side now. Mr. Hanley. Good morning, Your Honors. May it please the Court. I'd like to first address a point that Mr. Sweeney closed with before he talked about the amendment issue, which I'd like to get to as well. But Mr. Sweeney says that the district court construed the Master Communications Unit as receiving video, as required to receive video. In fact, Judge Patel's construction is quite the opposite. In the Markman proceedings, our argument was that there was no written description in either of the two embodiments of a combination of a Master Communications Unit with a Menu Storing Unit and with Videoclip Storage Units. And we argued to the Court that, look, we're going to go through this construction exercise, but as a heads up, we intend to seek a ruling from the Court that there's no written description. What Judge Patel did in deciding the construction of the Master Communications Unit term was to say, I think the term is broad. I can find it in a number of contexts in the specification, and specifically with regard to Figure 5, I can read the Master Communications Unit on Menu CSU DSU Units 516, which she acknowledged received a command signal. So essentially what she held was that the signal that's received by the Master Communications Unit, it's not required to be video. In fact, she read it on the Figure 5 embodiment as receiving a command signal. So that statement by Mr. Sweeney is just incorrect. Going to the written description argument properly. What's missing from Figure 5? Pardon? What's missing from Figure 5? What in the claim does it fail to describe? So if you take the District Court's ruling, Judge Patel's ruling, that the Master Communications Unit element reads on Menu CSU DSU 516, then what's not described is what we call the same signal limitation in the claim. The claim requires that the same signal that's received by the Master Communications Unit is divided into a plurality of signals. So if one takes that limitation, you go to Figure 5, you make the assumption, as the court held, that Units 516 are a Master Communications Unit, then the signal that those units receive, the command signal, is not divided into a plurality of signals. That's not disputed. That part's not disputed. And that was the basis on which Judge Chen found there was no written description. He accepted the finding of Judge Patel that Units 516 are a Master Communications Unit, and then said, okay, looking at the rest of the claim, the elements that were not part of the claim construction exercise because there was no dispute over them, looking at the rest of the claim, and particularly this same signal limitation, that's not disclosed. And that was the basis for his written description argument. I submit that the court could alternatively find that there's no written description because there is no Master Communications Unit at all in Figure 5. That was the argument we made below. But either way, there's a disconnect between this claim and the written description. You don't find what the law requires, which is that the combination of elements in Claim 3, which is what the inventor supposedly contributed to the field, the bringing together of these elements, that combination with the interrelationships that are described there in the claim is nowhere found in the specification. I think the court can affirm that this report... Show me where the claim requires it to be the same signal. You seem to have hinged the only thing missing. Am I understanding you right that the only thing missing from Figure 5 is a descriptive support for the same signal limitation? Well, that's the only thing that's at issue on this appeal. That's the basis on which the district... I thought that the thing at issue on the appeal was whether the amps are coupled to the Master Communication Unit. Am I totally wrong about that? You guys have briefs that are like ships passing in the night. Some attempt as appellees should be made to track the appellant's briefs. I found the briefs to unfortunately not be as helpful as I would have liked. Well, I think if I can offer an explanation for that. Our brief basically tracked the district court's ruling. Their brief, I submit, was sort of a confusing patch of what had happened below. So we attempted to follow in a linear way the basis for the decision made by the district court and support that decision, and that's why we had ships passing in the night. So back to my original substantive question. Is the issue not that Figure 5 doesn't disclose amps coupled to the Master Communication Unit? Well, that's not there either, but the specific basis was if you look at the... I'm in Column A. This is A75, looking at Claim 3. Yes. Okay. Where's the same signal limitation? Okay, so if you look at Line 30, it's within this plurality of distribution amplifier units elements. It says, where in each of the plurality of distribution amplifier units has an input that receives said synchronous digital signal corresponding to the data from a respective one of said plurality of video clip storage units and at least one output that divides said synchronous digital signal, et cetera, et cetera, into a plurality of synchronous signals. So said synchronous digital signal refers back to the synchronous digital signal that's referred to in the prior element, which is what is received by the Master Communications Unit. So that's a command. Well, in Figure 5, it's a command. Correct. Now, we're talking about the claim now. You know, it's a two-step process. What does the claim require? Step 2, what does the specification say? Did you look for indefiniteness? Pardon? Did you look for indefiniteness? We didn't get to that, but we did have that as an issue that we had thought we would move on at some point. But anyway, that's the issue, Your Honor. It's that the Master Communications Unit is required to receive a synchronous digital signal. The distribution amplifier units take that same signal and divide it into plurality signals. How do you divide up a command signal? Well, that's the problem with the claim. There's a disconnect between the claim and what's described. The claim requires that, and that's the written description problem. The written description has a command signal. It's in the only place in the specification where one could argue that the six elements that are set forth here are combined. In that only place, that Master Communications Unit receives a command signal, and clearly it's agreed that that command signal is not divided into plurality signals. So it's not our burden to make sense of the claim. The fact of the fact is the claim is erection when applied to the specification. And that's the essence of the written description problem here. What if the claim is, as they argue, though, what if the synchronous digital signal is a video the user is uploading? It is then being divided like views. Have you ever seen views? Don't use it. Lots of copyright infringement going on. But have you heard of the software? No? Okay, so you open it up on your system, and basically people can steal bits and pieces of what's on your system while simultaneously giving you bits and pieces. And you get all the bits and pieces from lots of different people. So it's not like I'm giving you a video. It's like I'm giving you a small portion of the video. She's giving you. He's giving you. So why isn't this claim directed to a video being uploaded and then that video being divided and sent out? And in the Figure 1B embodiment, you have that. But the Figure 1B embodiment doesn't have the menu storing unit or the video storage unit to store by subject matter. So if we're looking at Figure 5, which is the only place you can look at to find this, if the claim requires that the synchronous digital signal be video, then you don't have a master communications unit in Figure 5. Why does it require it? I don't see anything that suggests that the synchronous digital signal is required to have any particular format. And that's exactly what Judge Patel held. So taking that as a given, then it can be non-video. And looking at the specification to try to match this claim up and find these six elements together and the function that's required, the same signal limitation, one looks at Figure 5 and one sees that what is received by the so-called master communications unit there, item 516, is a command signal and what the claim requires to happen to that signal doesn't happen. It's not divided into a plurality of signals. So therefore, one doesn't find support for Claim 3 in Figure 5. One doesn't find support in Figure 1B because it's missing two things, as Judge Wallach pointed out. What about the combination of the two figures, which seems to be something they're arguing, that why can't one still look at both of those and understand from them that the inventor possessed the idea of doing these things? Because it essentially is what the court in Lockwood said is not allowed, and that is basically determining that there's written description support based on what may have been obvious to someone who emerged there. Well, he wasn't explaining the obvious part, just to say he said that one of skill in the art would look at 1B and Figure 5 and know that the inventor possessed it. And there's no evidence of that. That's an argument that's being made. The expert declaration that was submitted, Dr. Katz never said that, to his credit, never said that because it simply isn't supportable based on what's described here. Moreover, counsel has talked about the Agilent case several times and suggested that there's a legal doctrine that pieces within a specification that are not combined can be put together unless there's a teaching away or unless there's a statement or a suggestion that it's incompatible to describe them. That's not what the Agilent court held. Basically, the portion of the ruling in Agilent where the court used the term at odds was in the context of the court looking at argument made by the Appley Affymetrix that, in fact, there was an embodiment in which the method described, which required combining a closed chamber with bubble mixing, there was, in fact, an embodiment where that was described as occurring. And looking at the excerpt that was being cited for that proposition, the court said, no, this excerpt has to do with the embodiment where fluid flows into and out of the chamber. And the statement or the characterization in this excerpt of the fluid flowing into and out of the chamber, that is at odds with a chamber being closed. So the court wasn't saying that bubble mixing and a closed chamber were described as being at odds with each other. The court was simply saying that I don't agree with your position that everything is in this one embodiment. So there is no doctrine that pieces can be combined in the specifications like it's a box of Legos unless there's some teaching way because that would be completely at odds with the Lockwood decision. That's basically saying obviousness is okay, it's not. I asked Mr. Sweeney whether figure 1B contained anything that would constitute a menu storing unit or a video clip storing unit. And he referred me to the backup of figure 1B. Do you disagree with this? Well, so I think what he's saying is that he didn't provide for you a place where a menu storing unit is disclosed. In fact, they can see in their brief that there is no such inclusion in the figure 1B embodiment. What he's referring to is there is a common piece of hardware. In fact, there's more than one common piece of hardware between figure 1B and figure 5. That common piece of hardware is actually shown in detail in I think it's figure 1D and figure 1C. That common piece of hardware can be used in both. So it's used in figure 1B as a backup storage. Figure 1B embodiment basically is an up and out kind of system. A reporter uploads a video clip to this hub station which includes the master communications unit and then that's copied and sent out to multiple places. Meantime, a backup is made of what's input. That's not the same thing. That's not the same function as having multiple video clip storage units that each is dedicated to a single subject matter. So there isn't that architecture in figure 1B. It's only in figure 5. If I may say something about the motion to amend. Very quickly because your time is about to run out. One simple point. It's agreed that the first time that Transvideo raised the notion of adding claims was in September of 2011. The first time that the party submitted a proposed order which wasn't adopted where there was a deadline for final contentions was in June. So clearly there was no meeting in the minds that any deadline that we were agreeing to had to do with adding claims. Thank you. I just have a few brief comments. We've got a little over a minute. The patent specifically talks about the video distribution system 500 includes plurality of units 525A. They're the video storage units in figure 5 similar to backup units 134 or 136. So a specific reference is made comparing them to things similar. Number two. Similar in architecture or similar in function? Architecture and function because they're storage units for video. The same signal limitation. I mean I'm not quarreling with that. That's the absurdity of this written description attack that the command signal is the one that's stored and then the same signal is divided and rebroadcast. That's what claim construction is wrong. That's why the master communication unit should not just include video but should require video. Then there's no written description problem. Obviously a rebroadcast of command signal, that absurdity, isn't described in the patent. So this is a bootstrap argument. On page 53, by the way, when we refer to the CSU DSU units in figure 5, we specifically reference the column 7, lines 10 to 13, which identifies the units 535. And Dr. Katz didn't make any explicit thing about combining elements but he did that. He actually did that and looked at it. When you look at his paragraph, he looked at 1B as well as figure 5 and reached his conclusion. And one case I did think of is the Martek case. It's cited in our brief. The Martek case taught that you can mix various chemicals but the chemicals that were required to be mixed by a particular claim were different. It was attacked for lack of written description requirement and the court said, this court said, that is not fatal under the written description requirement. It didn't refer to obviousness. It said it teaches you can look at various parts of a patent and you can combine them and it can convince one aboard a skill in the art that the inventor is in possession of the invention. Thank you. The case is submitted. Dr. Katz, I appreciate it. Thank you. All right. The honor report is adjourned until tomorrow morning at 10 a.m.